Good morning, your honors. May it please the court. Lauren Tory on behalf of appellant Steven Bryan, I'd like to reserve three minutes for rebuttal and I will watch my time. Okay, thank you. Before the court is a self-defense case that is replete with evidentiary errors and faulty jury instructions, all of which undermine the jury's verdict, requiring remand for retrial. With this court's permission, I'd like to focus on three issues that were briefed. First, the instruction within the self-defense instruction. Second, the district court's failure to distinguish mens rea in the lesser included offense instructions. And finally, the improperly admitted evidence as state of mind. Turning first to the self-defense instruction that lacked unanimity. Here, there is a plain error and we know that it's clear and plain given this court's case law in Southwell and Ramirez, which found that failure to instruct the jury on is constitutional error. Here, this court has stated in LaPierre that under the third prong, the burden for Mr. Bryan is somewhat of a lower bar because the court is not looking at whether this affected the verdict or whether the outcome would have been different. The court looks to, under the third prong, whether there is this genuine possibility of juror confusion. And here, we have that given the language in the instructions as a whole. The jury was never instructed that if it was hung as to self-defense, that it must acquit Mr. Bryan. Given that the jury did not receive this instruction and with the verdict form that was sent or returned in this case, it's clear that there is this genuine possibility of juror confusion. I'm a little puzzled by that comment, counsel. You had a situation where your client was charged with murder one, murder two, voluntary manslaughter and involuntary manslaughter. The jury understood the evidence well enough to reject the first two, which of course is almost totally a matter of mens rea. They reached unanimity with respect to voluntary manslaughter. It seems to me that the actual results in this case soundly reject the thinking of what you're saying here in terms of jury confusion. In what way were they confused? I would point this court to Southwell. The case here is very similar. There, the court found that based on the language provided in the instructions, the instructions left open the possibility that the defendant there could be convicted, even if divided on sanity. The same is true here. The jury did not receive any instruction as to what to do when it was divided on self-defense. But it received a unanimity instruction, right? The general unanimity instruction, Your Honor. And can you point to any case law from our circuit that says that in this situation you must have a specific unanimity instruction? There isn't a case that says exactly what happened in this case, but it is a case-specific analysis. And when we look at this court's case law as to when it found that there wasn't a plain error for this genuine possibility of jury confusion, it included cases that dealt with a special verdict form as to self-defense, or interrogatories, or interrogations. So the jury was — there was something else in the record that could point to the fact that the jury was not confused. The counsel, if — I'm sorry, did you want to — No, no, please. Go ahead. If a juror had found that the government didn't prove that — had not disproved the self-defense beyond a reasonable doubt, they wouldn't have voted to convict, would they? A voluntary manslaughter? So in Southwell, something similar happened where the jury sent back a note that said that it was divided as to sanity and it was unanimous as to guilt, as to the elements. It's possible that that took place in this case as well, given the language that was provided in the instructions. But that's all you have, and that was the model instruction in use at the time. We have something else, Your Honor. I would point the court to the jury verdict form at EOR 12, where underneath the jury's — where it wrote in that it found guilty for voluntary manslaughter, it states, if you find the defendant not guilty of voluntary manslaughter, or if you do not unanimously agree on a verdict for voluntary manslaughter, you should proceed to consider the lesser-included offense of involuntary manslaughter. The jury here did. It considered it and found him not guilty of involuntary manslaughter. So we have this strange verdict form that shows there was confusion as to unanimity, because the jury proceeded. Why was that confusing? Involuntary manslaughter suggests it's a form of negligence. They concluded that he intentionally killed his son. It was manslaughter, not murder, but it was — it seemed to me it's fairly clear. What's confusing about the fact that they also said there was no involuntary manslaughter? It's confusing because it says if you are not unanimous, go on to consider involuntary manslaughter. So let me make sure I understand what your position is. You're not arguing that a self-defense instruction must always include specific unanimity language. You're arguing that there was evidence the jury was confused? I'm arguing, Your Honor, that there is a We do not need to show that the jury was in fact confused, only the possibility of confusion. And the jury verdict form and the language of the instructions support that. And the possibility of confusion is the jury instruction form? It's both, Your Honor. It's the lack of information or lack of instruction in the instructions as a whole as to what the jury does when divided on self-defense. And this strange verdict form that notates if they're not unanimous, continue on to involuntary manslaughter. And here, again, I would point the court to Southwell because this case is very helpful. There the court found there didn't need to be this this proof or this this conclusion that in fact the jury was was confused. It found that there was a jury note that was sent back which went beyond the possibility of non-unanimity as to the affirmative defense. But that wasn't in this case? No, we did not have a jury note, Your Honor. But that's it supports the fact that on the language alone, the ambiguous language alone in the jury instructions, that can meet our burden for possibility of juror confusion. And we have more than that. You're saying that the jury question in the other case you cited is evidence that the jury could be confused in this case? No, Your Honor. I'll rephrase. Sorry. No, what I'm saying is that in United States v. Southwell, the court found that the language in the jury instructions alone left open the possibility of a guilty verdict even when the jury was divided as to sanity. So the language in the jury instructions, that clarity or lack of ambiguity is enough for the genuine possibility of juror confusion. Here, we have more than that because we have this verdict form that supports confusion as to unanimity. But again, we do not need to were actually confused. There is no need for a jury note. Is that your best argument? Yes, Your Honor. Here, that's the court's precedent under LaPierre. Of the arguments in this case, is this your best argument? Our strongest argument, Your Honor, as to self defense, because here that was the critical issue. In this case, it was the main theory of defense presented, and this court is tasked with ensuring that the jury unanimously found the government rebutted self defense. We can't be sure of that. So the other question that I had about these instructions is, they clearly understood the second part of the instruction, or let's see, they showed they understood and correctly followed the instructions as to second degree murder and malice of forethought. For example, on malice of forethought, they were instructed, in order to show that the defendant acted with malice of forethought, the government must prove the absence of a sudden quarrel or heat of passion beyond a reasonable doubt. And they found not guilty on that because they obviously understood the government didn't prove the absence of the sudden quarrel. And then on voluntary manslaughter, they were  the government must prove each of the following, and one of them is that Mr. Bryant did not act in reasonable self defense. So if they got the same kind of instruction and understood it enough to find not guilty on one, why do you think they found they were confused as to the next degree of or lesser included offense of murder? For the mens rea argument, Your Honor? So here, the problem with the mens rea argument is that the, at least for the manslaughter offenses, there is no articulable difference between extreme and wanton for the jury to understand that distinction. And here, this court's case law says there needs to be a meaningful difference. There are these varying degrees of recklessness. And here we're looking at the difference between extreme reckless disregard for human life and wanton reckless disregard for human life. And that is not clear enough for the jury to understand the difference. And why this is so important. Well, let me ask you, what language do you think the district court should have used to describe the mens rea for each of those lesser included offenses? The court needed to align the jury instructions with this quality of the awareness of the risk that we get from the guy. What language? So for voluntary manslaughter, it would be something like the awareness of the risk to human life is reduced by and for involuntary ordinary recklessness with minimal awareness to the risk of human life. That would be a meaningful distinction between the two. Here, while we have provocation with voluntary manslaughter, the problem is that the jury could have skipped mens rea given this confusing, reckless, these recklessness language that can't be differentiated and would have just relied on provocation to find voluntary manslaughter. That would be a violation of Mr. Brian's rights, because the jury must find beyond a reasonable doubt that the government proved each element, meaning mens rea. I gather you would agree that basically you're asking us to speculate what happened. There's no evidence that they did that or that they were confused. Would you agree with that? As you said, it's a possibility. Yes, Your Honor. That is. And you want us to be able to find the reason confused and the various levels of mens rea between voluntary manslaughter and involuntary manslaughter. Is that correct? For the mens rea argument as to the jury instructions, the standard for the third prong is whether it undermined confidence in the verdict or in the outcome of the proceeding. So the third prong for the self-defense error and the mens rea error are different. So the possibility of juror confusion applies to unanimity error specifically. That's what this court says in LaPierre. As to mens rea, the third prong would be an analysis of whether it undermines confidence in the outcome of the proceedings. So you're down to three minutes. Is there any other argument that you want to emphasize in your? Your Honor, I would just note that as to the evidentiary error that I mentioned earlier, the district court improperly omitted that as state of mind evidence because it doesn't meet any of the relevant factors. It was not contemporaneous. It was not relevant. And there was ample time for reflection. All right. Thank you. Thank you very much. You may reserve the remainder of your time. Mr. Flake. May it please the Court, Adam Flake of the United States. With respect to the unit, the, the mens rea instructions, I did want to point out that the, the question of the distinction between extreme recklessness and gross recklessness and gross negligence, it wasn't actually relevant in this case. There was no doubt that, that he and that Brian intentionally pulled the trigger. He answered on cross examination. We asked him, did you mean to pull the trigger? And he said yes. Well, and how many times was this young man shot? 22 times or something like that? 20 times, yes. 20 times. He I, I think that was a reasonable inference that the jury could, could draw. Well, I think he probably had to say yes to that question to have the reasonable self-defense, defense available to him. That, yes, he shot him, but he reasonably thought he was in imminent danger of, of harm from his son. I, I, I suppose, Your Honor, he could have argued in the alternative. I mean, that's his theory. That's his theory. I, I mean, he could have. He can't alternatively argue, yes, I intended to shoot him, and no, I didn't. That's not really a viable alternative. Yes, Your Honor. On the self-defense issue, why do you think the model instruction was updated to incorporate a specific unanimity requirement if the general unanimity instruction ordinarily is sufficient? I, I think that it's there out of an abundance of caution. And I, I, I don't think that the, the writers of the model jury instruction were, or are able to generally, or were purporting to make up a rule that it always has to, that it, that it, that from, you know, from before it should have been included in, in every case. I think they just did it out of an abundance of caution so that it eliminates any risk of confusion. Well, was he just by happenstance tried at a model, jury instruction had not been updated, and, and if he had been tried a year later, he would have been, had the benefit of that instruction? I suppose, Your Honor, he also could have asked for it, and I don't think the government would have said no if he had asked for that language to be included in the instruction. Neither party asked for it, and, and we followed the, the model as, the court followed the model as it was written at the time. So we're reviewing this under plain error review? Yes, Your Honor. And if the court doesn't have any further questions, I'll concede the rest of my time. I just have one question. Oh, yes. About, about the Facebook message. Regarding that message, was the defendant, since you're, you're going to sit down shortly, I'll at least ask you this. They make a great deal of the fact that the defendant didn't have a chance to cross-examine LM about potential leniency on her DUI charge. I think I know what the answer is for me, but I'd appreciate knowing the government's response to that claim. Our response, I mean, as stated in our brief, the court found that there was, there was no basis. There was nothing showing that, that the witness expected leniency. There was no promise made to the witness, and the court therefore found it irrelevant. You have different jurisdictions also, right? Different jurisdictions. She was charged by the state for DUI. This was a federal charge. No evidence of collusion, no claims of anything like that. Okay. I have one more question on the Facebook message. Sure. What, what was the relevance of that? The relevance was simply showing him evaluating his capability for being a violent person. It was in response to, you know, there were, there were days. I understand what a response, but how was that possibly relevant? What, how he's been violent? Right. He, I mean, I think that by, by saying that he was asserting that he was not violent, which, you know, our case just disagreed with that assertion, and so we wanted to get it in there as a, as his characterization of himself. Okay. Thank you. Thank you. Thank you very much, counsel. Ms. Torey? Thank you, Your Honors. Just to clarify here, the, the issue with the mens rea instructions is that we can't know whether the jury found under intent or reckless mens rea. And so these reckless mens reas have varying degrees and they needed to be meaningfully distinguished in order for the jury to understand the differences between, in particular, voluntary manslaughter and involuntary manslaughter. Just to touch on briefly some of the things that the government addressed, the Facebook comment issue. There, the defense did argue that it was an interrogatory, and the government attempts to argue this is relevant character evidence, but this was not admitted as character evidence. It was admitted as hearsay state-of-mind evidence. Let's, since you don't have a lot of time, let's just, let's just say it was error. Why wouldn't it be harmless error at worst? Here, it's harmless error because it was relied on, it was presented over multiple days, and it was relied on by the government in closing. It went directly to the theory of self-defense because it showed a character for violence, although that wasn't the intent of the comment. Maybe I misunderstood. Did you admit it was harmless? Did I understand you correctly? I'm sorry, no, like it is, there is prejudice here because of this error. Okay, and as you well know, as a capable federal public defender, harmlessness is measured in terms of its outcome on the trial. What's your best argument that the Facebook evidence had an actual negative impact in this trial? Here, the entire issue was self-defense presented in this case, and it went directly to that theory of defense and Mr. Bryan's character. This evidence was admitted improperly as character evidence that he was violent. That's how, why it is harmful here in this case. So my notes say that it was not objected to at trial, but the we should consider this waiver of waiver and just get to the whether or not it was an error to admit the Facebook message. Your Honor, as for the character evidence argument, that was waived below. That's correct. The government only attempted to admit this as hearsay evidence under state-of-mind exception. So unless the court has any further questions, we'd ask this court to remand for retrial given the faulty jury instructions. Had Mr., if Mr. Bryan is given the opportunity for retrial, the deliberations would be meaningfully different with a proper self-defense instruction and a proper mens rea instruction for voluntary manslaughter. Thank you, Your Honors. Thank you very much, counsel. United States v. Bryan will be submitted.
judges: WARDLAW, SMITH, Rayes